ORIGINAL



IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| LATONYA MARIE COLEMAN-ROSE, | § | |
| PLAINTIFF, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. 4:09-CV-00617-A |
| | § | |
| MICHAEL J. ASTRUE, | § | |
| COMMISSIONER OF SOCIAL SECURITY, | § | |
| DEFENDANT. | § | |

## FINDINGS, CONCLUSIONS AND RECOMMENDATION OF THE UNITED STATES MAGISTRATE JUDGE AND NOTICE AND ORDER

This case was referred to the United States Magistrate Judge pursuant to the provisions of Title 28, United States Code, Section 636(b). The Findings, Conclusions and Recommendation of the United States Magistrate Judge are as follows:

## FINDINGS AND CONCLUSIONS

### I. STATEMENT OF THE CASE

The plaintiff, Latonya Marie Coleman-Rose ("Coleman-Rose"), filed an application for Title II disability insurance benefits ("DIB") on January 17, 2007, alleging a disability onset date of March 1, 2000.[1] (Transcript ("Tr.") 10, 102-04.) After her application was denied initially and on reconsideration, Coleman-Rose timely requested a hearing before an administrative law judge ("ALJ") and a hearing was held in Fort Worth, Texas before ALJ Jack W. Raines on December 16, 2008. (Tr. 10, 21-40.)

In her January 2007 application, Coleman-Rose claimed disability due to a torn cruciate ligament in her right knee, hypertension, shoulder pain, and migraine headaches. (Tr. 32, 35,

---

[1] Coleman-Rose's last insured date for Title II purposes was June 30, 2005, meaning that she must establish disability on or before that date. 42 U.S.C. §§ 416(i)(3) and 423(c)(1).

1

130.) On March 3, 2009, the ALJ issued a decision finding that she was not disabled. (Tr. 10-19.) On August 18, 2009, the Appeals Council denied Coleman-Rose's request for review. (Tr. 1-4.) Coleman-Rose subsequently filed the instant action in federal court on October 16, 2009. (doc. #1.)

## II. STANDARD OF REVIEW

The Social Security Act defines a disability as a medically determinable physical or mental impairment lasting at least twelve months that prevents the claimant from engaging in substantial gainful activity. 42 U.S.C. § 423(d), 1382c(a)(3)(A); *McQueen v. Apfel*, 168 F.3d 152, 154 (5th Cir. 1999). To determine whether a claimant is disabled, and thus entitled to benefits, a five-step analysis is employed. 20 C.F.R. §§ 404.1520, 416.920. First, the claimant must not be presently engaging in substantial gainful activity. Substantial gainful activity is defined as work activity involving the use of significant physical or mental abilities for pay or profit. 20 C.F.R. §§ 404.1527, 416.972. Second, the claimant must have an impairment or combination of impairments that is severe. An impairment or combination of impairments is not severe if it has such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work. 20 C.F.R. §§ 404.1520(c), 416.920(c); *Stone v. Heckler*, 752 F.2d 1099, 1101 (5th Cir. 1985), *cited in Loza v. Apfel*, 219 F.3d 378, 392 (5th Cir. 2000). At the third step, disability will be found if the impairment or combination of impairments meets or equals an impairment listed in the appendix to the regulations. 20 C.F.R. §§ 404.1520(d), 416.920(d). Fourth, if disability cannot be found on the basis of the claimant's medical status alone, the impairment or impairments must prevent the claimant from returning to his past relevant work. *Id.* §§ 404.1520(e), 416.920(e). And fifth, the impairment must prevent the claimant from doing any work, considering the claimant's residual functional capacity, age,

education, and past work experience. *Id.* §§ 404.1520(f), 416.920(f); *Crowley v. Apfel*, 197 F.3d 194, 197-98 (5th Cir.1999).

At steps one through four, the burden of proof rests upon the claimant to show that he is disabled. If the claimant satisfies this responsibility, the burden shifts to the Commissioner at step five of the process to show that there is other gainful employment the claimant is capable of performing in spite of his existing impairments. *Crowley*, 197 F.3d at 198; *see also Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994). If the Commissioner meets this burden, the claimant must then prove that he cannot, in fact, perform the work suggested. *Waters v. Barnhart*, 276 F.3d 716, 718 (5th Cir. 2002). A denial of benefits is reviewed only to determine whether the Commissioner applied the correct legal standards and whether the decision is supported by substantial evidence in the record as a whole. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995); *Hollis v. Bowen*, 837 F.2d 1378, 1382 (5th Cir. 1988). Substantial evidence is such relevant evidence as a responsible mind might accept to support a conclusion. *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001). It is more than a mere scintilla, but less than a preponderance. *Id.* A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings support the decision. *Id.* This Court may neither reweigh the evidence in the record nor substitute its judgment for the Commissioner's. *Harris v. Apfel*, 209 F.3d 413, 417 (5th Cir. 2000). The Court must, however, carefully scrutinize the record to determine if the evidence is present.

### III. ISSUES

Coleman-Rose, who is proceeding *pro se*, presents the following issues:

1. Whether the ALJ properly evaluated the opinion of Dr. Clarence J. Brooks, M.D. ("Brooks");

2. Whether the ALJ properly determined that Coleman-Rose was non-compliant with medical treatment recommendations; and

3. Whether the ALJ failed to properly evaluate Coleman-Rose's residual functional capacity ("RFC") by considering the impact of all of her medically determinable impairments.

(Plaintiff's Brief ("Pl. Br.") at 5-6.)

## IV. ADMINISTRATIVE RECORD

A. Background and Vocational History

Coleman-Rose was born on July 4, 1962. (Tr. 16-17, 24-26.) She has a high school diploma and attended a year and a half of college. (Tr. 17.) Her past relevant work experience was as a motor vehicle assembler and as a spray painter. (Tr. 17.) Coleman-Rose did not engage in substantial gainful activity from March 1, 2000 through the date of the ALJ's decision. (Tr. 12, citing 20 C.F.R. §§ 404.1520(b) and 404.1571 *et seq.*)

B. Administrative Hearing

At her hearing before the ALJ, Coleman-Rose was represented by an attorney and testified on her own behalf. (Tr. 10, 21.) Vocational Expert ("VE") Shelly Eike also testified. (Tr. 10, 36-38.) The VE testified that Coleman-Rose's past job as a motor vehicle assembler was medium, unskilled work with a specific vocational preparation ("SVP")[2] level of two. (Tr. 36.) The VE further testified that Coleman-Rose's past job as a spray painter was medium, semi-skilled work with an SVP level of four. (Tr. 36.) The ALJ gave the VE the following hypothetical:

> Assume for me an individual of the same age, education, and vocational history as claimant. Further assume that this hypothetical individual would have the following limitations, lift and carry occasionally ten pounds, lift and carry

---

[2] The SVP level refers to the amount of lapsed time required by a typical worker to learn the techniques, acquire the information, and develop the facility needed for average performance in a particular occupation. *See Dictionary of Occupational Titles* app. C (rev. 4th ed.1991). Unskilled work usually requires less than thirty days of training, which corresponds to an SVP level of 1 or 2; semi-skilled work corresponds to an SVP level of 3 or 4; and skilled work requires an SVP level of 5 or higher. Social Security Ruling 00-4p. *See generally* 20 C.F.R. §§ 404.1568, 416.968.

frequently no more than ten pounds, stand and walk about two hours in an eight-hour day and sit about six hours in an eight-hour day. Push/pull limitations in the lower extremities will be limited to occasional at the lift and carry level.

No climbing of scaffolds, ropes or ladders, occasional ramps and stairs, occasional balancing, no kneeling or crawling, occasional crouching and stooping. No manipulative limitations, no visual or communication limitations, no work around hazardous moving machinery and no work at unprotected heights. With those limitations, could such a person perform any of the past relevant work that the claimant performed, either as actually performed or as customarily performed in the national economy?

(Tr. 36-37.) In response to the ALJ's hypothetical, the VE testified that such an individual would be precluded from performing Coleman-Rose's past relevant work. (Tr. 37.) The VE then testified that there would be other jobs in the national or regional economy that such a person could perform, including small product assemblers at the sedentary level, unskilled, with an SVP of two, representing at least 50,000 jobs nationally and 5,000 jobs in Texas. (Tr. 37.) The VE also listed unskilled hand laborers and production workers at the sedentary level, SVP level of two, representing 45,000 jobs nationally and approximately 3,500 jobs in Texas. (*Id.*) When asked by the ALJ whether those jobs would be available if the hypothetical person had the ability to only occasionally handle and finger with the dominant hand, the VE responded that there would not be a significant number of jobs such a person could perform. (Tr. 36-38.)

C. The ALJ's Decision

In making his decision, the ALJ performed the five-step sequential evaluation process for determining whether a person is disabled. (Tr. 12-19.) At step one, the ALJ found that Coleman-Rose last met the disability insured status requirements of the Social Security Act on June 30, 2005. (Tr. 12, citing 42 U.S.C. §§ 416(i)(3) and 423(c)(1).) He also found that she had not engaged in substantial gainful activity from March 1, 2000 through June 30, 2005. (*Id.*, citing 20 C.F.R. § 404.1520(b) and 404.1571 *et seq.*)

At step two, the ALJ determined that Coleman-Rose had the severe impairments of right knee pain, right shoulder pain, headaches, and obesity. (*Id.*, citing 20 C.F.R. § 404.1521.) The ALJ continued to step three, finding that Coleman-Rose did not have an impairment or combination of impairments that met or equaled a listing at step three of the disability analysis. (Tr. 24, citing 20 C.F.R. Part 404, Subpart P, Appendix 1.) The ALJ then formulated Coleman-Rose's RFC as follows:

> ...[Coleman-Rose] retained the residual functioning capacity, over a sustained period of time, to occasionally lift and/or carry 10 pounds, frequently lift and/or carry 10 pounds, stand and/or walk at least 2 hours in an 8-hour workday, and sit for about 6 hours in an 8-hour workday, further limited by only occasional pushing and/pulling with the lower extremities; no climbing ladders, ropes, or scaffolds, only occasional climbing ramps or stairs; only occasional balancing, crouching, or stooping; no kneeling or crawling; no working overhead; and no exposure to hazardous moving machinery or unprotected heights; with no manipulative or visual/communicative limitations; and with the ability to sustain work mentally (*See* SSR 85-15).

(Tr. 13.)

At step four, the ALJ found that Coleman-Rose was unable to perform any of her past relevant work. (Tr. 16.) Then at step five, the ALJ determined that, given Coleman-Rose's age, education, work experience, and RFC, there were jobs existing in significant numbers in the national economy that she could perform. (Tr. 17, citing 20 C.F.R. § 404.1566.) Ultimately, the ALJ concluded that Coleman-Rose was not disabled within the meaning of the Act at any time from her alleged date of onset through the date of the decision. (Tr. 18.)

## V. DISCUSSION

### A. Whether the ALJ properly evaluated the opinion of Dr. Brooks

Coleman-Rose first asserts that the ALJ erred when he declined to give controlling weight to the opinion of Brooks, Coleman-Rose's treating physician since 1992. (Pl. Br. at 11-12; Tr. 291.) Specifically, she criticizes the ALJ's failure to find that her hypertension was a severe impairment in light of Brooks' letter covering the subject. (Pl. Br. at 11-13; Tr. 13.)

6

Brooks signed a letter on October 7, 2008 stating that Coleman-Rose had required medication to treat hypertension for years, but that she continued to have episodic elevations in her blood pressure. (Tr. 291.) He also stated that she had "left ventricular hypertrophy as a result of her prolonged hypertension." (*Id.*) Ultimately, he opined that it was not likely that she would be able to return to gainful employment in the future. (*Id.*) The Commissioner responds that the ALJ properly considered the medical opinion evidence in accordance with the requirements of 20 C.F.R. § 1527 as well as Social Security Ruling 96-2p and Social Security Ruling 96-6p. (Defendant's Brief ("Def. Br.") at 5-6.) The Court agrees.

An ALJ assigns controlling weight to the opinions of a treating physician if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and not inconsistent with other substantial evidence in the record. 20 C.F.R. § 404.1527(d)(2); *Martinez v. Chater*, 64 F.3d 172, 176 (5th Cir. 1995). But the determination of disability always remains within the province of the ALJ, and the ALJ may decrease the weight assigned to a treating physician's opinion for good cause, which includes disregarding statements that are brief and conclusory, unsupported by acceptable diagnostic techniques, or otherwise supported by the evidence. *Leggett*, 67 F.3d at 566; *Greenspan*, 38 F.3d at 237; *see also* 20 C.F.R. § 404.1527(e).

The ALJ stated that he considered Brooks' opinion but dismissed it because the letter is dated after the insurability period, which ended on June 30, 2005. (Tr. 16.) Evidence showing degeneration of a claimant's condition after the period of the insured status has expired is not relevant to the Commissioner's analysis. *Torres v. Shalala*, 48 F.3d 887, 894 n. 12 (5th Cir. 1995). Although Brooks indicated that he had treated Coleman-Rose since 1992, therefore within the relevant time period, he merely mentions that her hypertension requires medication. (Tr. 291.) Coleman-Rose is required to establish that she suffered from hypertension of disabling severity. *Hames v. Heckler*, 707 F.2d 162, 165 (5th Cir. 1983). "The mere presence of

some impairment is not disabling per se." *Id.* Rather, Coleman-Rose must demonstrate that she "was so functionally impaired" by her hypertension "that she was precluded from engaging in any substantial gainful activity." *Id.* The Commissioner correctly points out that Brooks' letter does not describe any limitations caused by Coleman-Rose's hypertension, nor does it mention limitations she experienced during the relevant time period, before the expiration of her insured status in June 2005. (Tr. 291.)

The Court finds that the ALJ's failure to accept Brooks's October 2008 assessment of disability is not unwarranted nor is it irrefutable evidence that the ALJ's decision is erroneous or unsupported.

### B. Whether the ALJ properly determined that Coleman-Rose was non-compliant with medical treatment recommendations

Coleman-Rose next claims that the ALJ's conclusion that she was non-compliant with medical treatment recommendations was made in error because the ALJ failed to follow the protocols set forth in Social Security Ruling 82-59 for assessing whether noncompliance with prescribed treatment was within reason. (Pl. Br. at 12.) That ruling, however, specifically addresses situations in which an ALJ determines that a claimant is unable to perform work activity due to a disabling impairment, but finds that she would regain the ability to perform work activity if she complied with recommended treatment. Social Security Ruling 82-59. Coleman-Rose argues that the ALJ improperly assessed her non-compliance with respect to: (1) her hypertension medication, and (2) her recommended shoulder surgery, but the ALJ failed to find either of those impairments disabling. (Pl. Br. at 10-13; Tr. 10-18.) Further, the ALJ took Coleman-Rose's right shoulder injury into account in formulating her RFC by restricting her ability to work overhead and restricting her to lifting no more than 10 pounds. (Tr. 13, 18.) Thus, the Court finds that the portions of Social Security Ruling 82-59 referenced by Coleman-Rose are inapplicable to her case.

8

### C. Whether the ALJ failed to properly evaluate Coleman-Rose's RFC by considering the impact of all of her medically determinable impairments

Finally, Coleman-Rose claims that the ALJ erred in formulating her RFC by failing to consider the impact of all of her medically determinable impairments. (Pl. Br. at 14-15.) She first argues that the ALJ erred in giving little to no weight to the statements of Brooks and Thomas M. Kleuser ("Kleuser"), M.D., both treating physicians who opined that she was unable to return to work activity. (*Id.*; Tr. 14, 16, 75, 291.)

In formulating Coleman-Rose's RFC, the ALJ considered the opinions of Brooks and Kleuser, but stated that he would not give them controlling weight for specific reasons. (Tr. 14, 16.) Regarding Kleuser, the ALJ noted that his statement was internally inconsistent. (Tr. 14, 75.) Kleuser indicated that Coleman-Rose could perform work that did not require kneeling, excessive squatting, or lifting more than 25 pounds, but he also stated that she was precluded from work activity. (*Id.*) An ALJ is free to reject a treating physician's opinion when it is conclusory or contradictory. *See Greenspan*, 38 F.3d at 238. As for Brooks' opinion, the Court has previously determined, *supra*, that the ALJ properly disregarded Brooks' statement, which was given after the expiration of the insured period.

Moreover, the ultimate determination on whether a claimant is totally disabled is an issue reserved to the Commissioner. An ALJ must consider and weigh all medical opinions in the record, even opinions on issues like RFC that are reserved to the Commissioner. *Price v. Astrue*, 572 F. Supp. 2d 703, 710 (N.D. Tex. 2008); 20 C.F.R. § 404.1527(e)(2), 416.927(e)(2). But a treating physician's opinion that a claimant is totally disabled or unable to work has "no special significance." *Frank v. Barnhart*, 326 F.3d 618, 620 (5th Cir.2003); *see also* 20 C.F.R. § 404.1527(e)(1). The determination of disability always remains the province of the ALJ. *Id.* And an ALJ may reject the opinion of any physician regarding a claimant's disability status when the

9

evidence supports a contrary conclusion. *See, e.g., Martinez v. Chater*, 64 F.3d 172, 175 (5th Cir.1995) (citation omitted). In this case, there is substantial evidence in the record supporting the ALJ's determination, including evidence indicating that Coleman-Rose had an unremarkable gait, normal strength, bulk, and tone in her muscles, normal musculoskeletal reflexes, normal range of motion without pain, mass or deformity, and the ability to move her legs significantly. (Tr. 15, 173, 262, 274, 299, 313.) The Court finds that the ALJ did not improperly discount the opinion of Coleman-Rose's treating physicians in determining her RFC.

Next, Coleman-Rose argues that the ALJ failed to adequately consider her shoulder pain or carpal tunnel syndrome in his RFC assessment. (Pl. Br. at 14-15.) The ALJ did, however, restrict Coleman-Rose to work that required lifting no more than 10 pounds and did not require overhead reaching, clearly accommodating her shoulder injury, even though he found that it was not as significant as she alleged. (Tr. 13, 491.)

As for Coleman-Rose's allegations of limitations stemming from her carpal tunnel syndrome, the record evidence does not support any additional limitations as her nerve conduction study was normal. (Pl. Br. at 14-15; Tr. 13, 15, 664.) Moreover, in 2007 Coleman-Rose stated that she had no limitations in her ability to use her hands and that her reaching was only limited because her knee was unstable. (Tr. 158.)

There is likewise substantial evidence in the record to support the ALJ's decision not to include a limitation for Coleman-Rose's migraine headaches. The record shows that a computed tomography scan of her head returned normal results (Tr. 175), and her headaches often accompanied incidents of high blood pressure, which the record indicates was resolved with medication. (Tr. 245-46, 252-53, 312, 320, 355.) Coleman-Rose has failed to point to evidence indicating that additional limitations to accommodate her headaches were required.

In sum, the ALJ's RFC assessment for Coleman-Rose reflects the limitations caused by Coleman-Rose's combination of impairments, and it is supported by substantial evidence. The Commissioner met his burden at step five to show that Coleman-Rose can perform other substantial work in the national economy, and Coleman-Rose has failed to meet her burden to rebut this finding. *See Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005) (citations omitted).

## RECOMMENDATION

For the foregoing reasons, the Court recommends that the Commissioner's decision be affirmed.

## NOTICE OF RIGHT TO OBJECT TO PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATION AND CONSEQUENCES OF FAILURE TO OBJECT

Under 28 U.S.C. § 636(b)(1), each party to this action has the right to serve and file specific written objections in the United States District Court to the United States Magistrate Judge's proposed findings, conclusions and recommendation within fourteen (14) days after the party has been served with a copy of this document. Thus the deadline within which to file specific written objections to the United States Magistrate Judge's proposed findings, conclusions and recommendation is **January 18, 2011**. The United States District Judge need only make a *de novo* determination of those portions of the United States Magistrate Judge's proposed findings, conclusions and recommendation to which specific objection is timely made. *See* 28 U.S.C. § 636(b)(1). Failure to file, by the date stated above, a specific written objection to a proposed factual finding or legal conclusion will bar a party, except upon grounds of plain error or manifest injustice, from attacking on appeal any such proposed factual findings and legal conclusions accepted by the United States District Judge. *See Douglass v. United Services Auto Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996)(en banc).

## ORDER

Under 28 U.S.C. § 636, it is hereby ORDERED that each party is granted until **January 18, 2011** to serve and file written objections to the United States Magistrate Judge's proposed findings, conclusions and recommendation. It is further ORDERED that if objections are filed and the opposing party chooses to file a response, the response shall be filed within seven (7) days of the filing date of the objections.

It is further ORDERED that the above-styled and numbered action, previously referred to the United States Magistrate Judge for findings, conclusions and recommendation, be and hereby is returned to the docket of the United States District Judge.

**SO ORDERED.**
**January 4, 2011**

_____
JEFFREY L. CURETON
UNITED STATES MAGISTRATE JUDGE

JLC/cak